## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES O., et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 13-0512 |
| SCHOOL DISTRICT OF PHILADELPHIA | : | |
| | : | |
| Defendant. | : | |
| | : | |

## MEMORANDUM

TUCKER, C.J.                                                           September 26, 2014

Plaintiffs move under 20 U.S.C. § 1415(i)(3)(B) for attorneys' fees of $44,616.50[1] and

costs of $600.52 for prevailing in their suit against the School District of Philadelphia ("School

District").  The School District opposes the motion by arguing that any award is barred by

previously executed settlement agreements or, in the alternative, that the proper award should not

exceed $15,474.67.  Upon consideration of the parties' submissions, this Court will award to

Plaintiffs $33,701 in attorneys' fees and $600.52 in costs.

## I.       FACTUAL BACKGROUND

Plaintiffs are parents of C.O. and G.D., who were students in the School District at times

relevant to this action.  C.O. had a learning disability and G.D. experienced persistent learning

difficulties, which made them eligible for special education services from the School District.

When the School District failed to provide such services, Plaintiffs retained the Law Offices of

David J. Berney ("Law Firm") to initiate administrative actions on behalf of the students under

the Individuals with Disabilities Education Improvement Act ("IDEIA"), 20 U.S.C. §

---

[1] The total amount requested includes $39,281 in fees incurred as of the filing of the motion and $5,335.50 incurred
in filing a supporting reply brief.

1415(b)(7).[2]  Prior to their administrative hearings, both C.O. and G.D., through their respective representatives, reached settlement agreements with the School District through the resolution process specified in 20 U.S.C. § 1415(f)(1)(B).  (*See* Settlement Agreements, 2d Am. Compl., Exs. B and E, Doc. 12.)  In relevant part, the agreements contained nearly identical language requiring the School District to pay reasonable attorneys' fees and costs to the Law Firm pursuant to the attorneys' fee provisions of the IDEIA, 20 U.S.C. § 1415(i)(3), Section 504 of the Rehabilitation Act, 29 U.S.C. § 794a(b), and the Americans with Disabilities Act, 42 U.S.C. § 12133.  (*Id.* Exs. B and E, ¶ 5.)  The period in which the School District was to pay C.O.'s and G.D.'s attorneys' fees expired on or about December 2, 2012 and December 25, 2012, respectively, without any payment made by the School District.  (*Id.* ¶¶ 36, 62.)

On January 29, 2013, C.O.'s parents and Law Firm[3] filed their first Complaint in this Court when the School District failed to pay attorneys' fees and costs according to the terms of C.O.'s settlement agreements.  An Amended Complaint was filed on March 22, 2013 when G.D.'s parent joined as a Plaintiff.  A second and final Amended Complaint was filed on August 12, 2013.  Plaintiffs sought attorneys' fees and costs of $33,365 for C.O.'s administrative action and $24,962.50 for G.D.'s.

Following an arbitration hearing on November 6, 2013, judgment was entered in favor of Plaintiffs, awarding $27,500 to the parents of C.O. and $18,500 to the parent of G.D.  (*See* Civil J. Entered in Favor of Pls. and Against Def., Doc. 21.)  Pursuant to 20 U.S.C. § 1415(i)(3)(B), Plaintiffs now move for attorneys' fees and costs incurred in litigating the instant federal action.

---

[2] The Individuals with Disabilities Education Act ("IDEA") was renamed to the IDEIA by amendment, effective July 1, 2005.  Pub. L. No. 108-446, § 1, 118 Stat. 2647 (2004).

[3] The parents of C.O. and the parent of G.D. each entered into a representation agreement with the Law Firm that assigned to the Law Firm any rights to attorneys' fees awarded by the court or by virtue of a settlement between parties. Such assignments have been deemed valid.  *See Pub. Interest Law Ctr. of Phila. v. Pocono Mountain Sch. Dist.*, No. 09-cv-2326, 2010 WL 1024735, at *3 (M.D.Pa. Mar. 17, 2010) (finding that a client's express assignment of attorneys' fees to plaintiff legal services organization is insufficient grounds to dismiss a claim for attorneys' fees).

## II.     DISCUSSION

### A.  The Effect of the Settlement Agreements

The School District first argues that payment of attorneys' fees and costs for this federal

litigation is barred by the settlement agreements from Plaintiffs' prior, separate administrative

actions.  Under Pennsylvania law, "the fundamental rule in interpreting the meaning of a contract

is to ascertain and give effect to the intent of the contracting parties." *Amerisourcebergen Drug*

*Corp. v. Kohll's Pharmacy & Homecare, Inc.*, Civ. A. No. 09-1166, 2012 WL 5287887, at *4

(E.D.Pa. Oct. 26, 2012) (quoting *Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418,

429 (Pa. 2001)).  "In cases of a written contract, the intent of the parties is the writing itself."

*Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004).  If the contract terms are clear and

unambiguous, "the intent of the parties is to be ascertained from the document itself." *Id.*  A

contract is ambiguous if "it is reasonably susceptible of different constructions and capable of

being understood in more than one sense." *Id.*  An unambiguous contract may be interpreted by

the court as a matter of law. *Trustees of Univ. of Pa. v. St. Jude Children's Research Hosp.*, 982

F. Supp. 2d 518, 534 (E.D.Pa. 2013).

Regarding Plaintiffs' claim for attorneys' fees, their settlements contain the following

relevant provisions.  Paragraph 2 of both settlement agreements state:

> It is expressly understood and mutually agreed that this Confidential Settlement
> Agreement and General Release are intended to resolve all claims by Parents
> individually and on behalf of Student in any forum, and all claims for money
> damages, tuition reimbursement, attorney fees and costs, expert fees and/or
> compensatory education *relating to educational programming* afforded to Student
> under federal, state and common law[.]

(Settlement Agreements, 2d Am. Compl., Exs. B and E, ¶ 2, Doc. 12) (emphasis added).

Paragraph 5 states: "The District will . . . pay reasonable attorney's fees and costs to the Law

Offices of David J. Berney . . . for time expended and costs *on this matter* through the date of the fully executed Settlement Agreement[.]"  (*Id.* Exs. B and E, ¶ 5) (emphasis added).

The terms of the settlement agreements are clear and unambiguous.  The plain language of the agreements makes clear that they address only claims related to educational programming for C.O. and G.D.  The provisions requiring the School District to pay attorneys' fees and costs accordingly apply only to those fees and costs incurred during the course of the administrative actions.  The agreements are silent on attorneys' fees and costs otherwise incurred.  Moreover, the agreements explicitly state: "[N]othing in this Settlement Agreement shall be construed as a release by parents of any claims that may arise regarding events that occur after the date Parents signs [sic] the Settlement Agreement."  (*Id.* Exs. B and E, ¶ 3.)  This Court finds that such unambiguous language demonstrates the parties' intent that the preclusive effect of the settlement agreements will not extend to claims for attorneys' fees and costs incurred after the agreements' execution dates.  The Plaintiffs' instant request is therefore not contractually barred by their earlier settlement agreements with the School District.

### B.  Reasonable Attorneys' Fees

In the alternative, the School District argues that Plaintiffs' requested attorneys' fees and costs are unreasonable.  District courts have discretion to award reasonable attorneys' fees to a prevailing party in an action or proceeding arising under the IDEIA.  20 U.S.C. § 1415(i)(3). "Prevailing parties" are those that "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)) (interpreting "prevailing party" in the fee-shifting provision of 42 U.S.C. § 1988).  Under the IDEIA, the parent of a child with a disability may be a prevailing party.  20 U.S.C. § 1415(i)(3)(B)(i)(I).

4

The prevailing party must prove that its request for attorneys' fees is reasonable. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d. Cir. 1990); *Shanea S. v. Sch. Dist. of Phila.*, No. 12-cv-1056, 2014 WL 2586940, at *1 (E.D.Pa. June 10, 2014). To do so, the party must submit evidence to support the hours worked and rates claimed. *Rode*, 892 F.2d at 1183 (quoting *Hensley*, 461 U.S. at 433). The opposing party may then challenge the reasonableness of the requested fee by submitting affidavits or briefs of sufficient specificity to give the petitioning party notice. *Rode*, 892 F.2d at 1183; *Belle v. United Princeton Props., Inc.*, 884 F.2d 713, 720 (3d Cir. 1989).

The starting point for calculating the amount of a reasonable fee is the lodestar, which is the product of an attorney's reasonable hourly rate and the number of hours reasonably spent on litigation. *Hensley*, 461 U.S. at 433; *Rode*, 892 F.2d at 1183. The court first examines whether an hourly rate is reasonable in light of the prevailing market rates in the relevant community. *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001); *Rode*, 892 F.2d at 1183. The attorney's self-designated billing rate, though an appropriate starting point for determining fees, is not dispositive. *Pub. Interest Research Grp. of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995). Factors such as the experience and skill of the prevailing party's attorneys should be considered. *Rode*, 892 F.2d at 1183; 20 U.S.C. § 1415(i)(3)(C). The court should also "'consider the complexity of the litigation and the sophistication of the services rendered' when setting an attorney's rates." *Melissa G. v. Sch. Dist. of Phila.*, Civ. A. No. 06-5527, 2008 WL 160613, at *2 (E.D.Pa. Jan. 14, 2008) (quoting *Wisdom v. Phila. Housing Auth.*, Civ. A. No. 02-8369, 2003 WL 21545123, at *4 (E.D.Pa. July 7, 2003)).

The court next determines the amount of hours reasonably spent on litigation. It should exclude from this calculation any hours that are excessive, redundant, or unnecessary as these

were hours unreasonably expended. *Rode*, 892 F.2d at 1183. Hours spent performing tasks that unnecessarily prolong the resolution of a claim should also be excluded. *Melissa G.*, 2008 WL 160613, at *3.

As a threshold matter, this Court finds that Plaintiffs are "prevailing parties" within the meaning of the attorney's fee provision of the IDEIA. They succeeded in their federal action by winning an arbitration award of $46,000, which was nearly 80% of the amount sought. A claim for attorneys' fees and costs under 20 U.S.C § 1415(i)(3)(B) is therefore available to Plaintiffs.

Regarding hourly rates, the School District stipulates to David Berney's rate of $350 as reasonable, but it challenges as unreasonable the rates of Megan Mahle, Vanita Kalra, and Jennifer Sang. The School District also contends that the hours worked by all attorneys are unreasonably excessive. The Court will address each argument in turn.

      1. <u>Hourly Rates</u>

Plaintiffs assert that the hourly rates set for Attorneys Mahle ($285), Kalra ($265), and Sang ($225) are reasonable. The School District, however, argues that they should be billed at hourly rates of $200, $175, and $200, respectively.

Under the IDEIA, fees are to be awarded "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). The court may reduce the amount of attorneys' fees if it "unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience[.]" *Id.* § 1415(i)(3)(F)(ii).

      a. <u>Attorney Mahle's Hourly Rate</u>

To support their contention that Attorney Mahle's rate of $285 is reasonable, Plaintiffs offer evidence that she graduated from New York University School of Law, worked in "civil

legal services" since her graduation in 2002, assisted Law Firm with special education issues for a year, is a staff attorney with the Health, Education, and Legal Assistance Project, and litigated "hundreds" of cases successfully.  Plaintiffs also include affidavits from three attorneys working in areas of civil rights and special education law as well as Mahle's own affidavit.[4]  They attest that Attorney Mahle's rates are well within the range of prevailing rates in the Philadelphia community for attorneys of comparable skill, experience, and reputation.

The School District argues that Attorney Mahle was admitted to the Pennsylvania Bar in 2006, but she assumed inactive status from 2007 until 2011 when she was reinstated.  Attorney Mahle offers no evidence of her legal experience, if any, in special education law prior to her reinstatement in 2011 so, the School District argues, she should not be able to tack on time from that period.  The School District cites the Community Legal Services ("CLS") Attorney's Fees Schedule of Hourly Rates ("CLS Schedule")[5] in arguing that Attorney Mahle's reasonable

---

[4] Plaintiffs provided affidavits from Judith A. Gran, Jennifer R. Clarke, and Daniel G. Atkins in support of their motion. (Pls.' Mot. For Att'ys' Fees, Exs. B-D, Doc. 23-1.) Though the affidavits were prepared for a petition for attorneys' fees in a different case, their statements are relevant here.
    The School District argues that the declaration of Attorney Berney and the affidavits of Attorneys Mahle, Kalra, and Sang are inadmissible for the purpose of establishing the reasonableness of their requested hourly rates. (Def. Resp. in Opp'n to Pls.' Mot. for Att'ys' Fees and Costs, 10-11, Doc. 24.) It cites to *Blum v. Stenson*, 465 U.S. 886 (1984), and *Holmes v. Millcreek Twp. Sch. Dist.*, 205 F.3d 583 (3d Cir. 2000). The School District's interpretation, however, is too severe. In *Blum*, the Supreme Court acknowledged the difficulty of determining an appropriate "market rate" for attorneys' fees. 465 U.S. at 895-96 n.11. It clarified that fee applicants have the burden of establishing reasonableness and that evidence "in addition to the attorney's own affidavits" should be considered. *Id. Holmes* stands for the same principle that "[a]n attorney's showing of reasonableness must rest on evidence other than the attorney's own affidavits." 205 F.3d at 595. Neither the Supreme Court nor the Third Circuit prohibit district courts from considering a fee applicant's affidavit along with other evidence submitted in support of the requested hourly rate. Accordingly, this Court reviews in full the declaration and affidavits of Attorneys Berney, Mahle, Kalra, and Sang as well as other affidavits and evidence submitted to establish the reasonableness of their requested fees.
[5] CLS does not charge its clients, but it provides a fee schedule to be used in cases where the award of attorneys' fees is available.  In support of its arguments for reasonable fees, the School District relies on the CLS Schedule that was effective at the time of the filing of their Response to Plaintiffs' Motion for Attorneys' Fees and Costs. CLS has since issued a new fee schedule, but the Court's analysis relies only on what has been submitted by the parties. *See Lanni v. New Jersey*, 259 F.3d 146, 149-50 (3d Cir. 2001) ("When attorney's fees are awarded, the current market rate must be used.  The current market rate is the rate at the time of the fee petition[.]" (internal citations omitted)); ABOUT CLS: ATTORNEY FEES, http://clsphila.org/about-cls/attorney-fees (last visited Sept. 18, 2014). The CLS Schedule relied on by the School District states the following:

| Attorneys post-law school experience under 2 years | $165-190 |
|---|---|
| Attorneys 2-5 years' experience | $180-225 |

hourly rate should be $200, which is mid-range for an attorney with 2 to 5 years of experience. (Def. Resp. in Opp'n to Pls.' Mot. for Att'ys' Fees and Costs, 9, Doc. 24.)

The Court disagrees with the School District in that Attorney Mahle has sufficiently demonstrated that she has been practicing law continuously since 2002, despite her inactive status in the Pennsylvania Bar from 2007 to 2011.  (Mahle Aff., Pls.' Mot. for Att'ys' Fees, Ex. K, ¶¶ 4-5, Doc. 23-2.) [6]  Thus, the Court will not adopt the School District's proposed rate of $200 based on only 2 to 5 years of experience.  It is unclear, however, the extent to which Attorney Mahle's experience has been in special education law.  Attorney Mahle has spent her years of practice across multiple areas including housing, family, and public benefits law.  (*Id.* Ex. K, ¶ 4.)  The nature and complexity of cases in these practice areas may vary greatly, which would command different rates.  *See Melissa G.*, 2008 WL 160613, at *3 (noting how "civil rights cases" may describe a variety of litigation experiences).  Moreover, the Plaintiffs fail to demonstrate how the instant action implicated any novel or complex issues that would warrant a high hourly rate for Attorney Mahle.  Thus, the Court reduces Attorney Mahle's reasonable rate to $255.  *See Shanea S.*, 2014 WL 2586940, at *3 (determining that Attorney Mahle's rate should be $255 for her work in a federal action to enforce the attorneys' fee provision of a settlement agreement reached under the IDEIA administrative process); *Gwendolyn L. v. Sch.*

| | |
|---|---|
| Attorneys 6-10 years' experience | $225-255 |
| Attorneys 11-15 years' experience | $260-335 |
| Attorneys 16-20 years' experience | $305-350 |
| Attorneys 21-25 years' experience | $325-370 |
| Attorneys more than 25 years' experience | $360-460 |
| Law Students | $80-135 |
| Paralegal I and II | $80-100 |
| Senior and Supervisory Paralegal | $100-135 |

(CLS Schedule, Def. Resp. in Opp'n to Pls.' Mot. for Att'ys' Fees and Costs, Ex. A, Doc. 24-1.)

[6] Attorney Mahle's affidavit explains that during her period of inactivity in Pennsylvania, she practiced law in Delaware and Massachusetts.  (Mahle Aff., Pls.' Mot. for Att'ys' Fees, Ex. K, ¶¶ 4-5, Doc. 23-2.)

*Dist. of Phila.*, Civ. A. No. 12-0051, 2014 WL 2611041, at *3 (E.D.Pa. June 10, 2014)

(concluding that Attorney Mahle's rate should be $255).

b.   <u>Attorney Kalra's Hourly Rate</u>

Plaintiffs assert that Attorney Kalra's rate of $265 is justified because she graduated from Yale Law School in 2006, she worked on education policy and disability rights issues prior to attending law school, she has worked in civil rights and international human rights law since graduating law school, she has practiced complex litigation in international courts, and she has assisted the Law Firm since 2013. Plaintiffs submit affidavits from four attorneys who attest that Attorney Kalra's rate of $265 is reasonable.[7]

The School District argues that Attorney Kalra's rate should be lowered because she was admitted to the Pennsylvania Bar in 2013 and should therefore be paid the fee of an attorney in her first year. Again, the School District relies on the CLS Schedule and proposes a rate of $175 for Attorney Kalra.

The Court agrees with the School District in noting the short duration of Attorney Kalra's practice in special education law in Pennsylvania. Attorney Kalra was involved in education policy and disability rights in college, but her activities since becoming a lawyer do not appear to have focused on special education law until 2013. (Kalra Aff., Pls.' Mot. for Att'ys' Fees, Ex. L, ¶¶ 3-8, Doc. 23-2.) Attorney Kalra's experience in federal litigation of the type involved here is likewise limited as her affidavit mentions litigation experience only in the international law context. She indicates that she has drafted contracts and joint venture agreements in connection with an affordable housing development, memoranda to the U.S. Department of Housing and Urban Development recommending regulatory and statutory changes, and arguments and statutes

---

[7] Plaintiffs provide the affidavits of Judith A. Gran, Jennifer R. Clarke, Lorrie McKinley, and Jonathan Feinberg in support of Attorney Kalra's rate of $265. (Pls.' Mot. for Att'ys' Fees, Exs. B, C, E, F, and G, Doc. 23-1.)

regarding international matters.  (*Id.* Ex. L ¶ 6.)  Despite recounting these experiences, Attorney Kalra does not demonstrate with sufficient specificity how she has accrued relevant experience continuously since 2006.  *See Law Offices of David J. Berney, P.C. v. Sch. Dist of Phila.*, Civ. A. No. 12-5033, 2014 WL 2611188, at *4 (E.D.Pa. June 10, 2014) (examining a similar affidavit executed by Attorney Kalra and finding that it did not show how she gained relevant experience without interruption since her law school graduation).  The Court, however, will not entirely discount her past experiences, which the School District so demands.  Rather, the Court will reduce Attorney Kalra's rate to $245 to better reflect her level of experience in special education law and federal litigation.  *Id.*

### c. Attorney Sang's Hourly Rate

Plaintiffs seek an hourly rate for Attorney Sang of $225, which they argue is reasonable because Attorney Sang graduated from Temple University Beasley School of Law in 2008, was a fellow at the American Civil Liberties Union for six months, and has worked for Law Firm since 2010.  Attorney Sang is also involved in various associations and committees dedicated to education law and disability rights.  Five attorneys executed affidavits in support of Plaintiffs' petition for an hourly rate of $225 for Attorney Sang.[8]

The School District proposes that Attorney Sang's reasonable hourly rate should be $200, based on the fact that Attorney Sang was admitted to the Pennsylvania Bar in 2011.  It argues that this rate is reasonable because it is soundly in the range of $175-225 for attorneys with 2 to 5 years of experience according to the CLS Schedule.

The Court disagrees with the School District's contention that Attorney Sang's experience should be measured from the date of her admission into the Pennsylvania Bar.

---

[8] Plaintiffs provide the affidavits of Lorrie McKinley, Jennifer R. Clarke, Josh Kershenbaum, Mary Catherine Roper, and Suzanne J. Young in support of Attorney Sang's rate of $225.  (Pls.' Mot. for Att'ys' Fees, Exs. E,F, H, and I, Doc. 23-1.)

According to her affidavit, Attorney Sang had worked an aggregate 43 months in the period between her law school graduation and the filing of the instant action. (Sang Aff., Pls.' Mot. for Att'ys' Fees, Ex. M, ¶¶ 3-6, Doc. 23-2.) More specifically, she has worked in special education law since March 2010. (*Id.* Ex. M ¶ 5.) And since March 2011, approximately 90% of her practice has been devoted to special education matters. (*Id.* Ex. M ¶ 6.) Attorney Sang has also obtained numerous successful outcomes in many special education cases, several of which the School District was a party. (*Id.* Ex. M ¶ 8.) For these reasons, the Court finds that Attorney Sang's skill and experience support the reasonableness of her hourly rate of $225.

2. Hours Expended

Plaintiffs provide detailed time sheets for each of the attorneys for whom fees are requested. A fee petition should include "some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates." *Rode*, 892 F.2d at 1190 (quoting *Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanatory Corp.*, 487 F.2d 161, 167 (3d Cir. 1973)). Generally, a motion for attorneys' fees should be specific enough to allow the court to determine the reasonableness of hours claimed. *Rode*, 892 F.2d at 1190 (citing *Pawlak v. Greenawalt*, 713 F.2d 972, 978 (3d Cir. 1983)). This Court finds that Plaintiffs' submission of computer-generated timesheets for Attorneys Berney, Mahle, Kalra, and Sang is sufficiently specific for review. *See Rode*, 892 F.2d at 1191 (accepting computer-generated timesheets in a petition for attorneys' fees).

The School District takes issue primarily with the excessiveness of Plaintiff's hours spent on the case. "In calculating the hours reasonably expended, a court should 'review the time charged, decide whether the hours set out were reasonably expended for each of the particular

11

purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Maldonado*, 256 F.3d at 184 (internal citations omitted).  The court is to take a "positive and affirmative function in the fee fixing process, not merely a passive role."  *Id.*  In making its determination, the court should consider the number of attorneys ordinarily required to litigate a matter, *id.* at 185, and whether the underlying matter was ultimately successful, *Rode*, 892 F.2d at 1183.  The School District argues that Plaintiffs' counsel spent excessive hours on: 1) drafting the pleadings, 2) preparing for the arbitration hearing, and 3) preparing for the instant motion for attorneys' fees.  The Court will address each of these categories in order.

a.  Hours Expended on Drafting the Pleadings

Plaintiffs' counsel expended 13.1 hours in drafting the complaints for this case.  Much of the time was spent familiarizing Attorney Mahle with the details of the underlying administrative actions giving rise to the instant federal case.  Attorneys Berney and Sang provided the relevant information since they were the only attorneys involved in those actions.  Ordinarily, the complaint for a case like this could have been developed by one or two attorneys.  The Third Circuit has cautioned lawyers to "understand that although the likelihood of success in a fee shifting case may be promising, the prospects of payment by a defendant with a deep pocket or a defendant with tax collecting powers should not encourage the utilization of an excess number of lawyers[.]"  *Maldonado*, 256 F.3d at 185.  The merits of C.O. and G.D.'s IDEIA claims had already been resolved prior to initiating this federal action.  The only claims pleaded were for attorneys' fees and were not particularly complex.  This type of litigation is also a familiar one for the Law Firm, which has brought similar claims in district court before.  *See, e.g., Law Offices of David J. Berney, P.C.*, 2014 WL 2611188, at *1; *Shanea S.*, 2014 WL 2586940, at *1; *Gwendolyn L.*, 2014 WL 2611041, at *1; *J.J. v. Sch. Dist. of Phila.*, Civ. A. No. 12-2531, 2014

WL 2611044, at *1 (E.D.Pa. June 10, 2014).  The need for three attorneys to draft the complaint is therefore questionable and excessive.

Also questionable is the filing of three complaints during the course of these proceedings. The first complaint listed only C.O.'s parents and Law Firm as Plaintiffs.  The first Amended Complaint added G.D.'s parent as a Plaintiff and included her claims for attorneys' fees. However, both C.O. and G.D.'s claims for fees had ripened prior to the filing of the first complaint and Plaintiffs give no explanation for why G.D.'s parent was not initially included as a party.  The time expended in drafting and filing the first Amended Complaint (3.4 hours) is therefore excluded as excessive.  Plaintiffs also filed a second and final Amended Complaint, allegedly in response to the School District's request.  (Pls.' Reply in Supp. of Mot. for Att'ys' Fees, 4-5, Doc. 27.)  The Court will reduce the hours claimed by 6.9 hours for excessive time spent on the first two complaints,[9] but it will not exclude the hours spent on the second Amended Complaint.[10]

### b.  Hours Expended in Preparing for the Arbitration Hearing

Plaintiffs' counsel worked 60.7 hours in preparation for the arbitration hearing.  This included time spent by Attorneys Berney and Kalra to research and to write a response to the School District's motion to quash a subpoena filed during the discovery period.  The Plaintiffs ultimately prevailed in opposing the School District's motion, so their expended hours were warranted.  (Order Denying Def.'s Mot. to Quash, Doc. 18.)  Thus, the Court will not go so far as

---

[9] The Court deducts 3.5 hours, 3 hours, and 0.4 hours from Attorneys Berney, Mahle, and Sang's timesheets, respectively, for excessive time spent reviewing records for the Complaint and for all time spent on the first Amended Complaint.

[10] Plaintiffs argue that 13.1 hours spent on the pleadings is reasonable in light of *Neena S. v. Sch. Dist. of Phila.*, in which the court determined that 15 hours spent on the complaint was reasonable. Civ. A. No. 05-5404, 2009 WL 2245066, at *9 (E.D.Pa. July 27, 2009).  *Neena S.*, however, is distinguishable from this case in a number of respects.  It not only followed a lengthy administrative process that included two hearings and a remand by the district court, but it also dealt with the merits of a student's eligibility for compensatory education under the IDEIA. *Id.* at *1-2.  The claims asserted in the instant action are significantly simpler and should therefore command fewer hours.

to exclude all of Attorney Berney's time and to reduce Attorney Kalra's time to a mere 8 hours, which the School District proposes.  Rather, the Court finds that Plaintiffs' counsel properly engaged in extensive preparation prior to the arbitration hearing.  These activities included preparing witnesses, drafting opening and closing statements, and preparing a memorandum of law for the arbitration panel.  The Court will, however, deduct the excessive time spent familiarizing Attorney Kalra with the underlying case as well as time for the duplicative efforts of Attorneys Berney, Kalra, and Sang.[11]  *See Rode*, 892 F.2d at 1187 ("A reduction for duplication is warranted only if the attorneys are *unreasonably* doing the *same* work." (internal quotation marks omitted)); *Elizabeth S. v. Sch. Dist. of Phila.*, Civ. A. No. 11-1570, 2012 WL 2469547, at *3 (E.D.Pa. June 28, 2012) (excluding one attorney's timesheet entries because another attorney charged for the same work).  Accordingly, the hours spent by Plaintiffs' counsel on preparation for the arbitration hearing is reduced by 14.4 hours.[12]

### c.  Hours Expended on Preparing the Motion for Attorneys' Fees

Attorneys Berney, Kalra, and Sang spent a total of 41.1 hours in preparing the instant motion for attorneys' fees and supporting reply brief.  Attorney Berney spent 19.5 hours on the motion, primarily on efforts to secure multiple affidavits and to draft the memorandum in support of the motion.  Attorney Berney also spent an additional 7.9 hours on preparing the reply brief after the School District filed its response.  Plaintiffs' motion was indeed comprehensive and anticipated many of the School District's counterarguments.  It did not, however, involve complex legal issues and Law Firm has submitted similar motions in other district court cases. *See, e.g., Law Offices of David J. Berney, P.C.*, 2014 WL 2611188, at *1; *Shanea S.*, 2014 WL

---

[11] Examples of the duplications include case consultations on October 15, 2013, November 1, 2013, and November 4, 2013 which were logged by both Attorneys Berney and Kalra.  The Court excluded Attorney Kalra's entries for these meetings.

[12] The Court deducts 4.1 hours, 8.7 hours, and 1.6 hours from the timesheets of Attorneys Berney, Kalra, and Sang, respectively, for excessive and redundant hours expended in preparing for the arbitration.

2586940, at *1; *Gwendolyn L.*, 2014 WL 2611041, at *1; *J.J.*, 2014 WL 2611044, at *1. Considering Attorney Berney's experience in petitioning for attorneys' fees, this Court finds his hours spent on the motion and reply to be excessive and reduces them by 30%.

Attorney Kalra also expended an excessive amount of time in researching and drafting the reply brief for this motion.  Her timesheet indicates that she spent three hours researching case law to include in the reply brief, including *U.S. v. Sunoco, Inc.*, 637 F. Supp. 2d 282 (E.D.Pa. 2009).  (Kalra Timesheet, Pls.' Reply in Supp. of Mot. for Att'ys' Fees, Ex. A, Doc. 27.)  The brief, however, does not include any analysis of *Sunoco, Inc.* and its only citation to the case appears in a footnote, accompanied by a single quoted sentence.  *Sunoco, Inc.*, which deals with contract interpretation for the purposes of determining successor liability, is also of questionable relevance to the issues discussed in the reply brief.  *Id.* at 286.  Attorney Kalra also spent 1.6 hours revising the reply brief to conform to this Court's required page limit, which is excessive considering the time she spent previously researching this Court's motions procedures. (Kalra Timesheet, Pls.' Reply in Supp. of Mot. for Att'ys' Fees, Ex. A, Doc. 27.)  Further, Attorneys Berney and Kalra reported redundant entries for shared tasks.[13]  For these reasons, the Court reduces Attorney Kalra's hours spent on the motion and reply brief by 4.5 hours.

Under the foregoing analysis, the resulting lodestar is $33,701, calculated as follows:

---

[13] Redundant time entries by Attorney Kalra include: 12/13/13 – e-mail to David Berney, Esquire re my timesheets in support of Plaintiffs' Motion for Attorney's Fees (0.1 hours); 1/15/14 Attorney case consultation with David J. Berney, Esq. re: strategy for reply brief (0.4 hours); 1/21/14 – Reviewed e-mail from David J. Berney, Esq. re: affidavit for supplemental timesheet, drafted affidavit, and e-mailed to David J. Berney, Esq (0.1 hours).  (Berney and Kalra Timesheets, Pls.' Mot. for Att'ys' Fees, Exs. A and L, Docs. 23-1 and 23-2; Berney and Kalra Timesheets, Pls.' Reply in Supp. of Mot. for Att'ys' Fees, Exs. A and B, Doc. 27.)

| Attorney | Rate | Hours Claimed[14] | Hours Deducted | Resulting Hours | Total Amount |
|----------|------|-------------------|----------------|-----------------|--------------|
| Berney | $350 | 72.3 | 15.82 | 56.48 | $19,768 |
| Mahle | $255 | 5.7 | 3 | 2.7 | $689 |
| Kalra | $245 | 56.3 | 11.7 | 44.6 | $10,927 |
| Sang | $225 | 12.3 | 2 | 10.3 | $2,318 |
| | | | | | $33,701 |

## C.  The School District's Financial Condition

The School District argues that the lodestar should be further reduced by 15% because of its severely distressed financial condition.  It first requests the Court to take judicial notice that the School District is a political subdivision of the Commonwealth of Pennsylvania and that it is a distressed school district under state law.  The School District then cites to *Alizadeh v. Safeway Stores*, 910 F.2d 234, 238 (5th Cir. 1990), and *Hughes v. Repko*, 578 F.2d 483, 488 (3d Cir. 1978), for the proposition that the financial condition of a non-prevailing party in fee-shifting cases is a factor that courts may consider in determining an award.  Finally, the School District discusses the decision in *Barrett v. West Chester University* in which the court reduced the lodestar by 15% based on the defendant's financial condition.  Civ. A. No. 03-4978, 2006 WL 859714, at *18 (E.D.Pa. March 31, 2006).

The School District has made similar arguments in opposition to motions for attorneys' fees in other recent cases.  *See, e.g., Law Offices of David J. Berney, P.C.*, 2014 WL 2611188, at *7-9; *Shanea S.*, 2014 WL 2586940, at *7-9; *Gwendolyn L.*, 2014 WL 2611041, at *7-8; *J.J.*, 2014 WL 2611044, at *6-8.  In *Shanea S. v. School District of Philadelphia*, the court rejected *Alizadeh* and *Hughes* as controlling authority because their rulings did not apply to the facts of the case.  2014 WL 2586940, at *8.  The *Alizadeh* court held that the financial condition of a

---

[14] "Hours Claimed" include those hours claimed in Plaintiffs' Motion for Attorneys' Fees as well as in their Reply Brief in Support of Motion for Attorneys' Fees.

non-prevailing plaintiff should be considered when determining the amount of attorneys' fees to be awarded. 910 F.2d at 239. It continued by expressly stating that its holding did not apply to cases when a non-prevailing *defendant*'s financial condition may be weighed. *Id.* at 239 n.8. In *Hughes*, the Third Circuit vacated a district court's reduction of the lodestar, which was made on the basis that the prevailing party was able to pay a portion of the attorney's fees. 578 F.2d at 488. In doing so, the *Hughes* court stated, "[W]e express no opinion on whether, or in what manner, a court may take into account ability to pay in exercising its discretion to award a reasonable attorney's fee[.]" *Id.* This Court agrees with the reasoning of *Shanea S.* in finding that *Alizadeh* and *Hughes* are not proper authorities in deciding whether to grant the School District's request for a reduction in the lodestar. *See Shanea S.*, 2014 WL 2586940, at *8 (quoting *M.M. v. Sch. Dist.*, Civ. A. No. 11-4482, 2012 U.S. Dist. LEXIS 85640, at *22-23 (E.D.Pa. March 27, 2012), and concluding that neither case directly supports the School District's proposition).

The Court also finds *Barrett v. West Chester University* to be distinguishable from the instant case. The fee applicants in that case prevailed in Title IX litigation and filed a petition for reasonable attorneys' fees pursuant to 42 U.S.C. §1988. *Barrett*, 2006 WL 859714, at *1-2. After calculating a lodestar of over $162,000, the court further reduced it by 15% because the defendant was a public university with limited funds, payment of attorneys' fees directly impacted taxpayers and students, fee awards were not intended to "produce windfalls to attorneys", and plaintiffs' counsel became involved as a matter of public service. *Id.*, at *17-18. The case here is distinguishable in that the lodestar is significantly smaller and does not prompt the same concerns that the *Barrett* court had about enabling "windfalls" to private law firms.

The Law Firm also did not take on Plaintiffs' cases as a matter of public service.[15]  Moreover, this Court has engaged in a detailed analysis to ensure that the School District's payment of attorneys' fees is fair and reasonable.  The Court finds persuasive the reasoning in *Shanea S.* that many defendants in IDEIA cases are public entities with similar budgetary conditions as the School District, but the IDEIA contains no language to suggest that those conditions should be considered in calculating an award of attorneys' fees.  *See Shanea S.*, 2014 WL 2586940, at *9 (sympathizing with the School District's circumstances, but nevertheless denying a reduction in an attorneys' fee award under the IDEIA).  This Court therefore declines to reduce the lodestar based on the School District's financial condition.

### D.  Reasonable Costs

Plaintiffs seek $600.52 in costs as reimbursement for court filing fee and copying costs.  The School District contests the inclusion of copying costs of $250.52.  It does not contest the filing fee cost.

The cost of making copies is reimbursable under 28 U.S.C. § 1920(4).  *See Law Offices of David J. Berney, P.C.*, 2014 WL 2611188, at *9 (awarding $270.95 in copying costs); *Laura P. v. Haverford Sch. Dist.*, Civ. A. No. 07-5395, 2009 WL 1651286, at *9 (E.D.Pa. June 12, 2009) (awarding $123.32 in copying costs).  Thus, the Court will allow for payment of $250.52 in copying costs.

---

[15] By contrast, plaintiffs' counsel in *Barrett* were Trial Lawyers for Public Justice, a public interest law firm based in Washington, D.C., and Hangley Aronchick Segal & Pudlin, who agreed to engage as co-counsel because of "the important social value in enforcing Title IX."  2006 WL 859714, at *1 (quoting the Hangley firm's declaration submitted with its brief).

**III.     CONCLUSION**

For the reasons set forth above, the Court grants in part Plaintiffs' Motion for Attorneys' Fees and awards $33,701 in fees and $600.52 in costs to Plaintiffs.  An appropriate order follows.